UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                                       :

SEBASTIAN QUARTARONE,          :

                    Plaintiff,        :     **REPORT AND**
                                       :     **RECOMMENDATION**
        - against -                 :
                                       :     10 Civ. 483 (SCR)(PED)

DOMINICK DIMELE,                :

                    Defendant.      :

                                       :
-----------------------------------------------------------x

**TO:    THE HONORABLE STEPHEN C. ROBINSON
         UNITED STATES DISTRICT JUDGE**

**INTRODUCTION**

      Plaintiff (who is proceeding pro se) has filed a form complaint (Docket entry # 1)("Complaint"), which was subsequently amended (Docket entry # 8)("Amended Complaint"), alleging that Defendant, a stockbroker, embezzled $70,000 from him while handling money that Plaintiff had invested with Defendant's firm. Defendant (who is also proceeding pro se), has filed a form answer ("Answer") denying Plaintiff's allegations and attaching a "settlement agreement and release" entered into in connection with the allegations Plaintiff sets forth in the Complaint ("Release Agreement"), which Defendant asserts is a complete defense to Plaintiff's claims. Defendant confirmed at a hearing before the Court that, by providing the Release Agreement, he was attempting to obtain a judgment in his favor on the pleadings. In accordance with Rule 12(d) of the Federal Rules of Civil Procedure, and after providing the parties notice and an opportunity for oral argument and/or additional submissions[1] I converted Defendant's motion for judgment on the pleadings into a motion for summary judgment ("the Motion"). For

---

[1]    See Sahu v. Union Carbide Corp., 548 F.3d 59, 67 (2d Cir. 2008); Fed. R. Civ. P. 12(d); Local Rule 56.2 (notice to pro se litigants who oppose a summary judgment motion).

the reasons set forth below, I respectfully recommend that the Motion be GRANTED in its entirety and, accordingly, that this case be dismissed.

## FACTS [2]

At some point prior to August 21, 2009, Plaintiff bought stocks from Defendant, who was, at that time, a stockbroker with Janney Montgomery Scott ("Janney"). At some point thereafter, Defendant informed him, in response to an inquiry by Plaintiff, that his stock was worth $70,000. Plaintiff then instructed Defendant to sell his stock. In response, Defendant asked if Plaintiff would allow him to use part of that money ($25,000) in further investments for Plaintiff. Plaintiff agreed but instructed Defendant to send him a check for the remaining $45,000. Plaintiff subsequently made several inquiries to Defendant by telephone about the check and Defendant repeatedly indicated that Plaintiff should be receiving the check shortly. Plaintiff never received the check.

Eventually, after further inquiry by Plaintiff to Defendant's manager, Plaintiff learned that Defendant had re-invested all $70,000 of Plaintiff's investment (rather than the $25,000 authorized by Plaintiff) and that Plaintiff's investment had become worth only $10,000. Plaintiff instructed Janney to sell the remaining stock and hired a lawyer to represent him in seeking to recover his losses from Janney.

Some time thereafter, Plaintiff's lawyer met with a representative of Janney (at a meeting attended by both Plaintiff and Defendant) to try to resolve the dispute. As a result of that meeting, the parties entered into the Release Agreement and Janney paid Plaintiff $33,000 in

---

[2] The facts set forth herein are derived primarily from the transcripts of the March 16, 2010 and April 13, 2010 hearings before the Court and are largely Plaintiff's version of the facts. Unless otherwise indicated, the facts do not appear to be in dispute. For purposes of this Report and Recommendation, acceptance of Plaintiff's version of facts is appropriate. See Fed. R. Civ. P. 56.

2

exchange for his release of, inter alia, any claims or liability against Janney or any of its employees (or former employees) arising from the relationship betwen Janney and Plaintiff and/or the dispute at issue that day. The Release Agreement, dated August 21, 2009, was signed by Plaintiff (on August 27, 2009) and a representative of Janney (on September 4, 2009). Plaintiff concedes that he received the $33,000 as set forth in the Release Agreement.

On or about January 21, 2010, Plaintiff filed the Complaint, pro se (Docket entry # 1). In it, he alleged that Defendant had "embez[z]led a total of $70,000.00 of [his] life savings," which was "in trust for [his] stocks." (Compl. at 3.) No basis for jurisdiction was identified by Plaintiff in his complaint. (See Compl. at 2.) On February 11, 2010, Defendant, also acting pro se, filed his Answer, identifying the Release Agreement as his defense and attaching a copy of the Release Agreement thereto. On January 26, 2010, Judge Robinson issued an Order referring this case to the undersigned for "All Matters." (Docket entry # 2.)

On March 16, 2010, the parties appeared before this Court for a hearing. After allowing Plaintiff to present his version of the facts leading up this action, I inquired as to Plaintiff's purported basis for subject matter jurisdiction in this Court. As Plaintiff was unable to articulate any such basis, I gave him leave to amend his Complaint to specify an asserted basis for subject matter jurisdiction.

On April 13, 2010, the parties again appeared before this Court for a hearing. Plaintiff then submitted his Amended Complaint, which still failed to identify any basis for subject matter jurisdiction. (Am. Compl. (Docket entry # 8).) His Amended Complaint, however, further specified his allegations, clarifying his previously vague allegation of embezzlement by stating, inter alia, that he gave Defendant permission to invest $25,000 and Defendant instead invested $70,000. (Am. Compl. at 3.)

On April 13, 2010, in accordance with Rule 12(d), I converted Defendant's motion for judgment on the pleadings into the present motion for summary judgment. (Apr. 13th Tr. 10:9-11.) Before doing so, I notified both Plaintiff and Defendant that I intended to do so – and informed each of the meaning and significance of this – and gave each an opportunity to submit additional briefing and/or evidence. (Apr. 13th Tr. 10:18-23, 11:7-10; 16:1-19:9.) Each party declined to make any additional submissions. (Apr. 13th Tr. 10:24-11:6, 13:11-12, 17:16-21, 19:3-9.) I have received no further submissions or correspondence from either party since that day. For the reasons that follow, I conclude that summary judgment should be granted in Defendant's favor.

## DISCUSSION

### I.     Applicable Legal Standard

Summary judgment is appropriate when the pleadings and evidence submitted to the district court establish that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Major League Baseball Properties, Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir. 2008). In determining whether the moving party is entitled to judgment as a matter of law, the court must resolve all ambiguities and draw all justifiable factual inferences in favor of the party against whom summary judgment is sought. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 162 (2d Cir. 2006). The non-moving party may not rely on mere conclusory allegations or speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful. D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998). A court may grant summary judgment when no reasonable jury could find in favor of the non-moving party. Id.

Because Plaintiff is proceeding pro se, this Court must give the Complaint a liberal construction that sets forth the strongest claims it suggests. See Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007); Marmolejo v. United States, 196 F.3d 377, 378 (2d Cir. 1999). Defendant's Answer is also entitled to a liberal construction. Id.

## II. Jurisdiction

When bringing an action in federal court, a plaintiff bears the burden of establishing that the Court has subject matter jurisdiction over the action. See Ally v. Sukkar, 128 Fed. Appx. 194, 195 (2d Cir. 2005).[3] Without providing any details or explanation, Plaintiff asserts that this Court has jurisdiction over this action.[4] (March. 16th Tr. 8:25-13:24; Apr. 13th Tr. 2:20-4:8.) Giving Plaintiff's Complaint a broad and liberal construction, as is required because he is proceeding pro se, Bertin, 478 F.3d at 491 and Marmolejo, 196 F.3d at 378, I read it to assert a claim for violation of the federal securities laws. In light of the present posture of the proceedings and the outcome I recommend herein, the Court need not reach the issue of whether or not Plaintiff has adequately alleged such a claim. Plaintiff's assertion, pro se, of subject matter jurisdiction is sufficient under the circumstances to satisfy his burden. See Ally, 128 Fed. Appx. at 195.

---

[3] Pursuant to the suggestion of the Court of Appeals in Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009), both parties will be provided with copies of all cases cited herein which are reported only on electronic databases or in the Federal Appendix.

[4] At the March 16th hearing, Plaintiff was given an opportunity to explain the specific basis for jurisdiction over his claim, which he has variously labeled "embezzlement" and "fraud." (Mar. 16th Tr. 11:10.) He was also given an opportunity to amend his complaint to establish jurisdiction prior to the April 13th hearing. At the April 13th hearing, he provided his Amended Complaint, which remained less than a model of clarity as to the asserted basis for subject matter jurisdiction, as the section entitled "jurisdiction" remained blank, though he added further details to the description of his "statement of claims." (Am. Compl. at 2-3.)

### III.     Defendant's Affirmative Defense

Defendant argues that the Release Agreement bars any claim by Plaintiff arising from investments made in his Janney account. (Ans. at 2; April 13th Tr. 13:8-10.) Plaintiff does not dispute that he signed the Release Agreement. (April 13th Tr. 5:16-21.) He states instead that he "wasn't told that [he]couldn't sue Mr. Dimele" and that he "wouldn't have signed [the Release Agreement if he] couldn't sue Mr. Dimele." (April 13th Tr. 12:19-23.)

The Release Agreement provides, in pertinent part:

> **Mr. Quartarone,** for and in consideration of the payment recited herein, and other good and valuable consideration, **hereby remise, release, and forever discharge Janney and its present and former** parents, subsidiaries, affiliates, agents, **employees,** attorneys, servants, predecessors, successors, and assigns (hereinafter collectively referred to as the "Released Parties") **of and from any and all manner of** debts, dues, contracts, agreements, promises, **claims, demands, actions, suits, causes of action or other liabilities** of any kind, nature or description whatsoever, in law, equity, arbitration or any other forum, state or federal, whether absolute or contingent, known or unknown, foreseen or unforeseen, **which Mr. Quartarone**, his agents, heirs, executors or assigns, ever had, now have or hereinafter **can, shall or may have** against the Released Parties, upon, **by reason of or relating directly or indirectly to any and all matters whatsoever, including, but not limited to, claims arising from investments made in his Janney account.**

(Rel. Agr. ¶ 4 (appearing as attachment to Ans.)(emphasis added).) The Release Agreement specifies that it is governed by Pennsylvania law. (Rel. Agr. ¶ 9 .)

Under Pennsylvania law, settlement agreements are construed and enforced in accordance with basic principles of contract law. Consolidated Rail Corp. v. Portlight, Inc., 188 F.3d 93, 96 (3d Cir. 1999). Because Plaintiff does not dispute that he signed the settlement agreement containing the above language in exchange for valuable consideration (specifically, $33,000), the agreement is enforceable against him. See California Sun Tanning USA, Inc. v. Electric Beach, Inc., 2010 WL 827725, at * 4 (3d Cir. Mar. 11, 2010)(citing Mazzella v. Koken,

559 Pa. 216, 739 A.2d 531, 536 (Pa. 1999)). This is true despite the fact that Plaintiff claims he was not told it would preclude him from bringing an action against Mr. Dimele, as the clear language of the contract indicates that such an action is precluded and Plaintiff does not contend that there was any parole agreement that contradicted any provision of the written Release Agreement. See United States v. El Amin, 200 Fed. Appx. 75, 77-78 (3d Cir. 2006).

In essence, Plaintiff argues that there was a unilateral mistake. However, under Pennsylvania law, in order to obtain rescission or reformation of a contract based on mistake (which is only available in certain limited circumstances), the mistake must be one that is mutual – a unilateral mistake will not suffice. Erie Telecommunications, Inc. v. City of Erie, Pa., 853 F.2d 1084, 1091 (3d Cir. 1988). Plaintiff has not alleged mutual mistake and it is clear that Defendant does not concede a mutuality of mistake. (April 13th Tr. 13:8-10.) Therefore, even when resolving all ambiguities and drawing all justifiable factual inferences in Plaintiff's favor, the Release Agreement is enforceable against Plaintiff. See California Sun Tanning USA, 2010 WL 827725, at * 4 (citing Mazzella, 559 Pa. 216, 739 A.2d at 536); El Amin, 200 Fed. Appx. at 77-78.

Accordingly, I conclude – and respectfully recommend that Your Honor should conclude – that, as a matter of law, Plaintiff is barred by the Release Agreement from proceeding with this action.

**CONCLUSION**

For the foregoing reasons, I conclude – and respectfully recommend that Your Honor should conclude – that Defendant's motion for summary judgment should be GRANTED in its entirety and this case should be dismissed.

7

**NOTICE**

Pursuant to 28 U.S.C. §636(b)(1), as amended, and FED. R. CIV. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to FED. R. CIV. P. 6(d), or a total of seventeen (17) days, see FED. R. CIV. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Stephen C. Robinson at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Robinson.


Dated: May 28, 2010
White Plains, New York


Respectfully Submitted,

Paul E. Davison
United States Magistrate Judge
Southern District of New York


A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Stephen C. Robinson
United States Courthouse
300 Quarropas Street
White Plains, New York 10601

8

Sebastian Quartarone, *pro se*
822 E. 218th St.
Bronx, NY 10467

Dominick Dimele, *pro se*
4 Bronxville Glen Dr.
Apt. #10
Bronxville, NY 10708